## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 13-cv-61747-MGC/TORRES

KURT S. SOTO, an individual, on behalf of
himself and all others similarly situated,

|                                  Plaintiff,

vs.

THE GALLUP ORGANIZATION, INC., a
Delaware corporation,

|              Defendant.              /

LAURIE C. MARR, on behalf of herself and all
others similarly situated,

|                                  Plaintiff,

vs.

GALLUP, INC., a Delaware corporation,

|              Defendant.              /

ANN FOX, individually and on behalf of all
others similarly situated,

|                                  Plaintiff,

vs.

GALLUP, INC., a Delaware corporation,

|              Defendant.              /

**CLASS ACTION**

**DEFENDANT GALLUP, INC.'S NOTICE
OF SUPPLEMENTAL AUTHORITY IN
SUPPORT OF MOTION TO STAY
LITIGATION PURSUANT TO PRIMARY
JURISDICTION DOCTRINE**

Honorable Marcia G. Cooke

---

### DEFENDANT GALLUP, INC.'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF THE MOTION TO STAY LITIGATION PURSUANT TO PRIMARY JURISDICTION DOCTRINE

Defendant Gallup, Inc. ("Gallup") respectfully submits this Notice of Supplemental

Authority in Support of the Motion to Stay Litigation Pursuant to the Primary Jurisdiction

Doctrine, in order to apprise the Court of new authority pertinent to Gallup's Motion to Stay.

On May 14, 2014, the District Court of Kansas stayed a putative TCPA class action pending the FCC's determination regarding the scope of the term automatic telephone dialing system ("ATDS") under the TCPA. *Higgenbotham v. Diversified Consultants, Inc.*, 13-2624-JTM, 2014 WL 1930885 (D. Kan. May 14, 2014) (For the Court's convenience, a copy of the *Higgenbotham* decision is attached hereto as Exhibit A).

In *Higgenbotham*, the plaintiff alleged that the defendant violated the TCPA "by (1) using an automatic telephone dialing system to place non-emergency calls to her cellular telephone without her prior express consent and (2) using an artificial or prerecorded voice during the calls." *Id.* at *1. The defendant "acknowledge[d] that the dialing system it used to call plaintiff qualifie[d] as a predictive dialer," but argued that there was "uncertainty as to whether all predictive dialers meet the definition of an ATDS, or whether predictive dialers that lack the current capacity for random or sequential number generation do not meet the definition of an ATDS." *Id.* The court granted the defendant's motion to stay, explaining that although "the FCC has issued several orders and rulings on the general topic of whether predictive dialers meet the ATDS definition ... none of these orders has addressed the specific 'capacity' question raised by defendant, as well as by Communication Innovators and YouMail." *Id.* at *3. Thus, the court concluded, "[b]ecause the issue defendant raises is presently pending before the FCC ... the FCC must be allowed to resolve the issue initially under the doctrine of primary jurisdiction." *Id.* (internal quotations omitted).

Similarly, on May 28, 2014, the District Court for the Western District of New York stayed a TCPA case pending the FCC's resolution of two issues: (i) the scope of an ATDS under the TCPA; and (ii) whether the TCPA applies to non-telemarketing calls. *Passero v. Diversified Consultants, Inc.*, 13-CV-338C, 2014 U.S. Dist. LEXIS 72748 (W.D. N.Y. May 28, 2014) (For

the Court's convenience, a copy of the *Passero* decision is attached hereto as Exhibit B). The court explained that a stay was appropriate because "these are the essential issues raised by prior application to the FCC in *In Re Communications Innovators*" and other petitions. *Id.* at *5. The *Higgenbotham* and *Passero* decisions provide added support for Gallup's position that the "FCC must be allowed to resolve" whether the equipment utilized by Gallup constitutes an ATDS. *Higgenbotham*, 2014 WL 1930885 at *3.

Respectfully submitted,

/s/ Dora F. Kaufman
J. RANDOLPH LIEBLER
Florida Bar No. 507954
Email: jrl@lgplaw.com
DORA F. KAUFMAN
Florida Bar No. 771244
E-mail: dfk@lgplaw.com
Attorneys for The Gallup Organization, Inc.
LIEBLER, GONZALEZ & PORTUONDO
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Telephone: (305) 379-0400
Facsimile: (305) 379-9626

Felicia Yu, Esq.
fyu@reedsmith.com
Raagini Shah, Esq.
rshah@reedsmith.com
Reed Smith LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Tel. 213-457-8000
*(Admitted Pro Hac Vice)*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 9, 2014 I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record listed on the service list below via CM/ECF.

/s/ Dora F. Kaufman
DORA F. KAUFMAN

Case No. 13-cv-61747-MGC/TORRES

**SERVICE LIST**

Scott D. Owens, Esq.
Florida Bar No. 0597651
644 E. Hallandale Beach Blvd.
Hallandale, FL 33009
Telephone: 954-589-0588
Facsimile: 954-337-0666
Email: scott@scottdowens.com

Steven R. Jaffe (Florida Bar No. 390770)
Email: steve@pathtojustice.com
Seth M. Lehrman (Florida Bar No. 132896)
Email: seth@pathtojustice.com
Mark S. Fistos (Florida Bar No. 909191)
Email: mark@pathtojustice.com
FARMER, JAFFE, WEISSING, EDWARDS
FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822

Douglas J. Campion, Esq.
LAW OFFICES OF DOUGLAS J.
CAMPION, APC
409 Camino Del Rio South, Suite 303
San Diego, CA 92018
Telephone: (619) 299-2091
Facsimile: (619) 858-0034
E-mail: doug@djcampion.com

E. Elliott Adler, Esq.
ADLER LAW GROUP, APLC
402 W. Broadway, Suite 860
San Diego, CA 92101
Telephone: (619)531-8700
Facsimile: (619)342-9600

Bret L. Lusskin, Esq.
Florida Bar No. 28069
1001 North Federal Highway, Suite 106
Hallandale Beach, FL 33009
Telephone: 954-454-5841
Facsimile: 954-454-5844
Email: Blusskin@lusskinlaw.com

Todd M. Friedman, Esq.
Nicholas J. Bontrager, Esq.
LAW OFFICES OF TODD M. FRIEDMAN,
P.C.
369 S. Doheny Drive, #415
Beverly Hills, CA 90211
Telephone: (877) 206-4741
Facsimile: (866) 633-0228
Email   tfriedman@attorneysforconsumers.com
nbontrager@attorneysforconsumers.com

Abbas Kazerounian, Esq.
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
Email: ak@kazlg.com

Joshua B. Swigart, Esq.
HYDE & SWIGART
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
Email: josh@westcoastlitigation.com

Case No. 13-61747-MGC

## SERVICE LIST

Scott D. Owens, Esq.
Florida Bar No. 0597651
644 E. Hallandale Beach Blvd.
Hallandale, FL 33009
Telephone: 954-589-0588
Facsimile: 954-337-0666
Email: scott@scottdowens.com

Steven R. Jaffe (Florida Bar No. 390770)
Email: steve@pathtojustice.com
Seth M. Lehrman (Florida Bar No. 132896)
Email: seth@pathtojustice.com
Mark S. Fistos (Florida Bar No. 909191)
Email: mark@pathtojustice.com
FARMER, JAFFE, WEISSING, EDWARDS
FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822

Douglas J. Campion, Esq.
LAW OFFICES OF DOUGLAS J.
CAMPION, APC
409 Camino Del Rio South, Suite 303
San Diego, CA 92018
Telephone: (619) 299-2091
Facsimile: (619) 858-0034
E-mail: doug@djcampion.com

E. Elliott Adler, Esq.
ADLER LAW GROUP, APLC
402 W. Broadway, Suite 860
San Diego, CA 92101
Telephone: (619)531-8700
Facsimile: (619)342-9600

Bret L. Lusskin, Esq.
Florida Bar No. 28069
1001 North Federal Highway, Suite 106
Hallandale Beach, FL 33009
Telephone: 954-454-5841
Facsimile: 954-454-5844
Email: Blusskin@lusskinlaw.com

Todd M. Friedman, Esq.
Nicholas J. Bontrager, Esq.
LAW OFFICES OF TODD M. FRIEDMAN,
P.C.
369 S. Doheny Drive, #415
Beverly Hills, CA 90211
Telephone: (877) 206-4741
Facsimile: (866) 633-0228
Email tfriedman@attorneysforconsumers.com
    nbontrager@attorneysforconsumers.com

Abbas Kazerounian, Esq.
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
Email: ak@kazlg.com

Joshua B. Swigart, Esq.
HYDE & SWIGART
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
Email: josh@westcoastlitigation.com

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d, 2014 WL 1930885 (D.Kan.)
(Cite as: 2014 WL 1930885 (D.Kan.))

Only the Westlaw citation is currently available.

United States District Court,
D. Kansas.
Tamara L. HIGGENBOTHAM, Plaintiff,
v.
DIVERSIFIED CONSULTANTS, INC., Defendant.

No. 13–2624–JTM.
Signed May 14, 2014.

Alan J. Stecklein, Michael H. Rapp, Consumer Legal
Clinic LLC, Kansas City, KS, for Plaintiff.

Bryant T. Lamer, Joshua C. Dickinson, Spencer Fane
Britt & Browne LLP, Kansas City, MO, for Defendant.

### ORDER

JAMES P. O'HARA, United States Magistrate Judge.

*1 Plaintiff Tamara L. Higgenbotham alleges that
defendant Diversified Consultants, Inc., violated the
Telephone Consumer Protection Act (TCPA), 47
U.S.C. § 227, *et seq.,* when it attempted to collect a
debt by (1) using an automatic telephone dialing sys-
tem to place non-emergency calls to her cellular tel-
ephone without her prior express consent and (2) using
an artificial or prerecorded voice during the calls.
Defendant has filed a motion to stay this case pending
resolution of issues before the Federal Communica-
tions Commission (FCC) (ECF doc. 15). Because
resolution of issues by the FCC could clarify matters
in this case, the primary jurisdiction doctrine applies
and the motion to stay is granted.

The TCPA prohibits calls to certain telephone
numbers, including numbers assigned to cellular tel-
ephones, using an "automatic telephone dialing sys-
tem" (ATDS) or "an artificial or prerecorded voice,"
except in an emergency or with the recipient's prior
express consent.[FN1] It defines an ATDS as "equipment
that has the capacity (A) to store or produce telephone
numbers to be called, using a random or sequential
number generator; and (B) to dial such numbers."[FN2]
The FCC, which Congress vested with authority to
prescribe regulations implementing the TCPA's re-
quirements,[FN3] ruled in 2003 that so-called "predictive
dialers"[FN4] fall "within the meaning and statutory
definition of 'automatic telephone dialing equipment'
and the intent of congress."[FN5] The FCC stated that
predictive dialers have hardware that, "when paired
with certain software, has the capacity to store or
produce numbers and dial those numbers at random, in
sequential order, from a database of numbers."[FN6] In
2008, the FCC issued an order affirming its ruling that
predictive dialers are ATDSs subject to the TCPA's
restrictions on the use of auto-dialers.[FN7] The 2008
order further made clear that the TCPA applies to calls
made for the purpose of collecting a debt.[FN8]

FN1. 47 U.S.C. § 227(b)(1).

FN2. *Id.* at § 227(a)(1).

FN3. *Id.* at § 227(b)(2).

FN4. "A predictive dialer is an automated
dialing system that uses a complex set of
algorithms to automatically dial consumers'
telephone numbers in a manner that 'predicts'
the time when a consumer will answer the
phone and a telemarketer will be available to
take the call." *In re the Rules and Regula-
tions Implementing the Telephone Consumer
Protection Act of 1991.* 17 FCC Rcd. 17459,
17503 (2002).

FN5. *In re the Rules and Regulations Im-*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2014 WL 1930885 (D.Kan.)
(Cite as: 2014 WL 1930885 (D.Kan.))

*plementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14017 (2003).

FN6. *Id.*

FN7. *In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd. 559, 566 (2008).

FN8. *Id.* at 564. Three years earlier, the FCC had assumed that the TCPA applied to debt collection calls when it ruled that collection agencies need not disclose their names where such disclosure was prohibited by the Fair Debt Collection Practices Act. *In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 20 FCC Rcd. 3788, 3802–03 (2005). The FCC also discussed the application of the TCPA to calls made by debt collectors in 2007. *In re the Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 23 FCC Rcd. 559 (2007).

According to defendant, however, the FCC's 2003 and 2008 orders have created uncertainty as to whether *all* predictive dialers meet the definition of an ATDS, or whether predictive dialers that lack "the current capacity for random or sequential number generation" do not meet the definition of an ATDS. [FN9] Stated another way, the question is "whether the dialing equipment's *present* capacity is the determinative factor in classifying it as an ATDS, or whether the equipment's *potential* capacity with hardware and/or software alterations should be considered, regardless of whether the potential capacity is utilized at the time the calls are made." [FN10] Defendant acknowledges that the dialing system it used to call plaintiff qualifies as a predictive dialer, but asserts that the dialing system does not meet the statutory definition of an ATDS

because it was not used for telemarketing, does not have the *present* capacity to store or produce telephone numbers to be called using a random or sequential number generator, and does not use artificial or prerecorded voices. [FN11]

FN9. ECF doc. 16 at 7.

FN10. *Mendoza v. UnitedHealth Grp. Inc.,* No. 13–1553, 2014 WL 722031, at *2 (N.D.Cal. Jan. 6, 2014).

FN11. ECF doc. 16 at 4 (citing ECF doc. 16–2, declaration of Mavis Pye in support of motion to stay, at ¶ 4).

*2 There are at least two petitions for declaratory ruling pending before the FCC that ask the FCC to decide whether equipment lacking the present capacity for random or sequential number generation, such as the dialing system used by defendant, constitutes an ATDS. First, Communication Innovators filed a petition on June 7, 2012, seeking a declaration "that predictive dialers that (1) are not used for telemarketing purposes and (2) do not have the current ability to generate and dial random or sequential numbers, are not 'automatic telephone dialing systems' ('autodialers') under the TCPA ." [FN12] On October 16, 2012, the FCC's Consumer and Governmental Affairs Bureau (CGB) issued a public notice requesting comment on Communication Innovators's petition. [FN13] The comment period ended on November 30, 2012. [FN14] A draft order on Communication Innovators's petition was circulated to the full Commission on May 13, 2013. [FN15] On September 10, 2013, the then-acting chief of the CGB sent letters to certain members of Congress stating that a draft order to resolve the petition was "under consideration by the Commission," that "Communication Innovators ... met with the staff recently to discuss the matter," and that she "expect[ed] the Commission to resolve it soon." [FN16]

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2014 WL 1930885 (D.Kan.)
(Cite as: 2014 WL 1930885 (D.Kan.))

FN12. *See* ECF doc. 16–1 at 13. Defendant asserts that whether the TCPA applies to nontelemarketing activity (i.e., debt collection activity) is an open question. The court disagrees, but recognizes that the FCC will have a chance to clarify its position in this regard in response to the Communication Innovators petition.

FN13. *See id.* at 82.

FN14. *Id.*

FN15. FCC Items on Circulation, *available at* http:// transition.fcc.gov/fcc-bin/circ_items.cgi (last visited May 13, 2014).

FN16. *See* ECF doc. 16–1 at 5–10.

Similarly, YouMail, Inc. filed a petition on April 19, 2013, asking the FCC to clarify, among other things, that the ATDS definition includes only equipment with a current capacity to store and produce telephone numbers to be called using a random or sequential number generator. On June 25, 2013, the CGB issued a public notice requesting comments on the issues raised in YouMail's petition. [FN17] The comment period ended on August 9, 2013. [FN18] Presumably, a draft order resolving the petition will be circulated to the Commission soon.

FN17. *See id.* at 87.

FN18. *Id.*

Defendant asserts that the FCC's decisions on these petitions will clarify issues in this case. Defendant asks the court, therefore, to stay this action under the primary jurisdiction doctrine, or under the court's inherent authority, until the FCC makes its determinations. The court finds that the primary ju-risdiction doctrine counsels in favor of a stay. [FN19]

FN19. Reaching this conclusion, the court need not determine whether a stay also is appropriate under the court's inherent authority.

Under the primary jurisdiction doctrine, courts may stay proceedings pending resolution of material issues that fall within the special competence of an administrative agency. [FN20] "The purpose of the doctrine is to 'allow agencies to render opinions on issues underlying and related to the cause of action.' " [FN21] In deciding whether to invoke the primary jurisdiction doctrine, the Tenth Circuit has directed district courts to "consider whether the issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency." [FN22] "Additionally, when the regulatory agency has actions pending before it which may influence the instant litigation, invocation of the doctrine may be appropriate." [FN23] There is "no fixed formula for applying the doctrine," however, and courts must "consider case-by-case whether the reasons for the existence of the doctrine are present and whether the purposes it serves, i.e., uniformity and resort to administrative expertise, will be aided by its application in the particular litigation." [FN24]

FN20. *Reiter v. Cooper,* 507 U.S. 258, 268 (1993).

FN21. *TON Servs., Inc. v. Qwest Corp.,* 493 F.3d 1225, 1238 (10th Cir.2007) (quoting *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.,* 415 F.3d 1171, 1179 (10th Cir.2005)).

FN22. *Id.* at 1239 (quoting *Crystal Clear,* 415 F.3d at 1179).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2014 WL 1930885 (D.Kan.)
(Cite as: 2014 WL 1930885 (D.Kan.))

FN23. *Id.*

FN24. *Id.* (quotations and modifications omitted).

**\*3** The court finds that the situation in this case fits the purpose of the doctrine. Here is a recap of what we know: (1) Plaintiff alleges that one of the two ways defendant violated the TCPA is by using an ATDS to call her cellular telephone. (2) Defendant disputes that allegation by arguing that the dialing system it used to call plaintiff does not qualify as an ATDS because it does not have the *present* capacity to store or produce telephone numbers to be called using a random or sequential number generator. (3) The TCPA defines an ATDS as "equipment that has the *capacity* to store or produce telephone numbers to be called, using a random or sequential number generator." [FN25] (4) Neither the TCPA nor previous FCC orders address the meaning of "capacity," specifically, whether it should be interpreted broadly to mean potential capacity or narrowly to mean present capacity.

FN25. *Id.* at § 227(a)(1) (emphasis added).

The court agrees with defendant that the statutory reference to "capacity" is unclear. The seminal question of its reach is a technical one, which falls in the ambit of the FCC's administrative expertise.[FN26] How the FCC ultimately defines "capacity" is a matter of administrative discretion. [FN27] It is proper for the FCC to make this determination in the first instance, such that uniformity and consistency in the application of the TCPA can be accomplished. Significantly, this very issue is presently pending before the FCC in the Communication Innovators and YouMail petitions. "There is therefore a real possibility that a decision by this court prior to the FCC's response to the ... petition[s] would result in conflicting decisions, either between our court and the FCC or our court and another circuit if the FCC ruling is appealed." [FN28] Because the issue defendant raises is "presently pending

before the FCC ... the FCC must be allowed to resolve the issue initially under the doctrine of primary jurisdiction." [FN29]

FN26. *See Mical Comnc'ns, Inc. v. Sprint Telemedia, Inc.,* 1 F.3d 1031, 1040 (10th Cir.1993) ("[I]t appears to us that the appropriate characterization of [services regulated by the FCC] requires expertise and a familiarity with the industry."); *Mendoza,* 2014 WL 722031, at \*2 (noting that "the FCC is in the process of utilizing its recognized expertise to consider" the question of whether present capacity or potential capacity qualifies equipment as an ATDS).

FN27. *See Hurrle v. Real Time Resolutions, Inc.,* No. C13–5765, 2014 WL 670639, at \*1 (W.D.Wash. Feb. 20, 2014) (ruling that "the law is unclear whether Congress intended the TCPA to prevent" the use of an autodialer to call debtors and finding that the "issue is clearly one of policy" to be decided by Congress and the FCC).

FN28. *Mical,* 1 F.3d at 1040.

FN29. *Id.* at 1033; *see also ION Servs.,* 493 F.3d at 1243 ("[W]here pending FCC actions may affect the outcome of a plaintiff's federal court litigation, this court has previously assumed a stay is appropriate."); *Mendoza,* 2014 WL 722031, at \*2 (noting the September 10, 2013 correspondence from the acting chief of the CGB and stating, "allowing the FCC to resolve the foregoing issues prior to adjudicating the issue in the present action, in order to obtain the benefit of the FCC's guidance, is appropriate.").

Plaintiff argues that the FCC has issued several orders and rulings on the general topic of whether

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2014 WL 1930885 (D.Kan.)
**(Cite as: 2014 WL 1930885 (D.Kan.))**

predictive dialers meet the ATDS definition, and all have concluded that they do. But none of these orders has addressed the specific "capacity" question raised by defendant, as well as by Communication Innovators and YouMail.[FN30] Thus, the FCC has not decided yet the precise, narrow question relevant here.[FN31]

> FN30. *See Mical,* 1 F.3d at 1040. (sua sponte staying case under the primary jurisdiction doctrine where, although "the FCC ha[d] issued several orders and rulings on the general topic" before the court, "none ... address[ed] the *precise* issue" before the court).

> FN31. For this reason, plaintiff's argument that the court may not "review" a final order of the FCC is not applicable.

Plaintiff also makes the broad-brush argument that it could be prejudiced by a stay because defendant "has 89 lawsuits (including the instant matter) pending in federal courts."[FN32] Plaintiff asserts that if the other cases go forward while this case is stayed, the "viability of the Defendant" could become a concern.[FN33]This This argument is not supported by evidence. Plaintiff has presented nothing from which the court could conclude that defendant's viability is threatened. But in any event, prejudice to the non-moving party is not a significant factor for the court's consideration under the primary jurisdiction doctrine.

> FN32. ECF doc. 19 at 2.

> FN33. *Id.* at 3.

**\*4 IT IS THEREFORE ORDERED:**

1. Defendant's motion to stay is granted. All pretrial proceedings in this case, including discovery and the pretrial conference, are stayed until a decision is issued by the FCC on the Communication Innovators petition.

2. Within **fourteen days** of the FCC's order on that petition, defendant shall file a status statement informing the court of the FCC's order and attaching a copy of the order as an exhibit. If the FCC does not issue an order on the Communication Innovators petition by **October 1, 2014,** defendant shall file a status statement by that date advising the court as to the FCC's progress on resolving the petition.

IT IS SO ORDERED.

D.Kan.,2014.
Higgenbotham v. Diversified Consultants, Inc.
Not Reported in F.Supp.2d, 2014 WL 1930885 (D.Kan.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT B



1 of 7 DOCUMENTS

MARIO PASSERO and CAROL PASSERO, Plaintiffs, -vs- DIVERSIFIED CONSULTANTS, INC., Defendant.

13-CV-338C

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK

*2014 U.S. Dist. LEXIS 72748*

**May 28, 2014, Decided**
**May 28, 2014, Filed**

**COUNSEL:** [*1] For Mario Passero, Carol Passero, Plaintiffs: Kenneth R. Hiller, LEAD ATTORNEY, Seth Andrews, Law Offices of Kenneth Hiller, Amherst, NY.

For Diversified Consultants, Inc., Defendant: Cindy D. Salvo, LEAD ATTORNEY, The Salvo Law Firm, P.C., West Caldwell, NJ; David George Peltan, LEAD ATTORNEY, Peltan Law, PLLC, East Aurora, NY.

**JUDGES:** JOHN T. CURTIN, United States District Judge.

**OPINION BY:** JOHN T. CURTIN

**OPINION**

Plaintiffs Mario and Carol Passero brought this action in April 2013 against defendant Diversified Consultants, Inc. ("DCI") seeking actual and statutory damages for violations of the Telephone Consumer Protection Act ("TCPA"), *47 U.S.C. 227 et seq.*, based on allegations that defendant utilized an automatic telephone dialing system ("ATDS"), as defined in the TCPA,[1] to place multiple calls to plaintiffs' cellular telephone service in an effort to collect on a debt incurred by non-party Tamieka Jones.[2] See Item 1, ¶ 13. In its answer, along with denying the allegations that it engaged in conduct violating the TCPA, DCI pleaded an affirmative defense specifically denying that it utilized an ATDS to contact plaintiffs. *See* Item 6, ¶ 49.

1    (1) The term "automatic telephone dialing system" means equipment which [*2] has the capacity--

(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B) to dial such numbers.

*47 U.S.C. § 227(a).*

2    Plaintiffs also sought damages pursuant to the Fair Debt Collection Practices Act ("FDCPA"), *15 U.S.C. § 1692 et seq.*, based on the same conduct. The parties have since settled the FDCPA claims.

DCI has now moved for a temporary stay of proceedings in this action pending the outcome of several petitions filed with the Federal Communications Commission ("FCC") seeking declaratory rulings for clarification of the very same TCPA issues raised by plaintiff in this action. See Item 19. For example, DCI has submitted as an exhibit a copy of a petition filed with the FCC in June 2012 by Communications Innovators, requesting that the FCC "clarify, consistent with the text of the TCPA and Congressional intent, that predictive dialers that (1) are not used for telemarketing purposes and (2) do not have the current ability to generate and dial random or sequential numbers, are not 'automatic telephone dialing systems' ('autodialers') under the TCPA and the Commission's TCPA rules." Item 19-3, p. 4 (*In Re Communications Innovators*, [*3] filed June 7, 2012). Similar issues are presented by petitions in *In re GroupMe, Inc.*, filed March 1, 2012 (*see* Item 19-4); *In*

2014 U.S. Dist. LEXIS 72748, *

*re YouMail, Inc.*, filed April 19, 2013 (*see* Item 19-5); and *In re ACA International*, filed January 31, 2014 (*see* Item 19-6). DCI has also submitted copies of recent correspondence between FCC Commissioners and Members of Congress indicating that the FCC anticipates a ruling on the matters raised by these petitions "in the near future." Item 19-1, p.2; *see* Item 19-7.

DCI's argument for a stay rests on the doctrine of "primary jurisdiction," which "allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight." *Nat'l Commc'ns Ass'n, Inc. v. AT & T Co., 46 F.3d 220, 222-23 (2d Cir. 1995)* (internal quotation marks and citation omitted). This practice of judicial deference to agency expertise is concerned with "promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R.R. Co., 352 U.S. 59, 63, 77 S. Ct. 161, 1 L. Ed. 2d 126, 135 Ct. Cl. 997 (1956), quoted* [*4] *in Ellis v. Tribune Television Co. 443 F.3d 71, 81 (2d Cir. 2006).* "Overall, the 'doctrine seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within the regulatory regime.'" *Ellis, 443 F.3d at 82 (quoting Pharm. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 673, 123 S. Ct. 1855, 155 L. Ed. 2d 889 (2003)* (Breyer, J., concurring).

While "[n]o fixed formula has been established for determining whether an agency has primary jurisdiction" to consider issues within its recognized expertise that are pending before the court, *United States v. Western Pacific Railroad Co., 352 U.S. 59, 65, 77 S. Ct. 161, 1 L. Ed. 2d 126, 135 Ct. Cl. 997 (1956),* the analysis generally focuses on the following four factors:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;

> (2) whether the question at issue is particularly within the agency's discretion;

> (3) whether there exists a substantial danger of inconsistent rulings; and

> (4) whether a prior application to the agency has been made.

*Ellis, 443 F.3d at 82 (citing Nat'l Commc'ns Ass'n, Inc., 46 F.3d at 222* [*5] )). The Second Circuit has noted

that "[t]he court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Id. at 223.*

As indicated by the pleadings and submissions presently before the court, DCI has raised questions in this case regarding (1) whether the "predictive dialer" apparatus utilized by DCI to place the calls at issue is an automatic telephone dialing system subject to the prohibitions of the TCPA, and (2) whether the TCPA even applies to the debt collection calls complained of. *See* Item 19-1, p. 1. These are the essential issues raised by prior application to the FCC in *In Re Communications Innovators* and the other petitions cited above, presenting questions regarding interpretation of terms and policies clearly within the agency's particular field of expertise and discretion, and well outside the conventional experience of this court. Indeed, the FCC has previously addressed the definition and scope of the term "automatic telephone dialing system" under the TCPA, and has revisited the issue several times in recognition of the "need to consider changes in technologies." [*6] *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd. 14014, 14092, 2003 WL 21517853, at *46 (F.C.C. July 3, 2003); see also 7 F.C.C. Rcd. 8752, 1992 WL 690928 (F.C.C. Oct. 16, 1992); 10 F.C.C. Rcd. 12391, 1995 WL 464817 (F.C.C. Aug. 7 1995); 23 F.C.C.R. 559, 2008 WL 65485 (F.C.C. Jan. 4, 2008).*

With regard to the danger of inconsistent rulings, the court need look no further than the split of case law authority on the threshold issue as to whether the protective provisions of the TCPA even apply to debt collection calls. *Compare Meadows v. Franklin Collection Service, Inc., 414 F. App'x 230, 235 (11th Cir. 2011)* (FCC has made clear that debt collection calls are subject to the TCPA's "established business relationship" and "commercial purpose" exemptions"), *and Franasiak v. Palisades Collection, LLC, 822 F. Supp. 2d 320 (W.D.N.Y. 2011)* (relying on FCC rulemaking decisions that debt collector's ATDS calls to non-debtor fall under TCPA's "commercial call exemption"), *with Iniguez v. The CBE Group, 969 F. Supp. 2d 1241, 1247 (E.D.Cal. 2013)* (neither TCPA nor implementing federal regulations contain a debt collector exception, or any exceptions [*7] related to calls made to cellular phones; citing cases).

As one court has recently observed in applying the primary jurisdiction doctrine to grant a debt collector defendant's motion to stay a TCPA action pending the FCC's determination of the issues raised by the *In Re Communications Innovators petition*:

2014 U.S. Dist. LEXIS 72748, *

The law is unclear whether Congress intended the TCPA to prevent [the use of an autodialer to call cellular phones for debt collection purposes]. Telemarketing is one activity while collecting debt from known debtors seems to be a wholly separate activity. Whether the latter activity falls within the scope of the TCPA is currently being addressed by Congress and the FCC [in *In Re Communications Innovators*]. The issue is clearly one of policy within those bodies, and guidance on the "capacity" of autodialing systems would further clarify the law that [the plaintiff] seeks to enforce in this action.

*Hurrle v. Real Time Resolutions, Inc., 2014 U.S. Dist. LEXIS 22204, 2014 WL 670639, at *1 (W.D.Wash. Feb. 20, 2014); see also Higgenbotham v. Diversified Consultants, Inc., 2014 U.S. Dist. LEXIS 65915, 2014 WL 1930885 (D.Kan. May 14, 2014)* (granting stay pending FCC's determination of issues rased by the *In Re Communications Innovators* petition); *Mendoza v. UnitedHealth Group Inc., 2014 U.S. LEXIS 1616, 2014 WL 722031, at * (N.D.Cal. Jan. 6, 2014)* [*8]  (same; finding that "the benefit to be provided by FCC guidance on potentially dispositive issues in this litigation outweighs the benefit to plaintiff in allowing the action to proceed."). The court agrees with this reasoning and approach.

Finally, the court finds that the advantages of deferring to the FCC's "primary jurisdiction" over the issues raised by the TCPA claims in this case (and in several other cases pending before this court) outweigh the potential for costs resulting from further complications and delay in the administrative proceedings, considering the recent correspondence between the FCC and Congress

indicating the likelihood of a ruling on the pending petitions relatively soon.

Accordingly, under the circumstances presented on this motion, and based on the foregoing considerations, the court makes the following order:

1. Defendant's motion to stay (Item 19) is granted. All discovery and other pretrial proceedings in this action are stayed until a decision is issued by the FCC addressing the TCPA issues raised in *In Re Communications Innovators*, or in any of the other multiple petitions pending before it, relevant to the claims remaining [*9] for determination in this case.

2. Within fourteen days of the FCC's ruling, defendant shall file a status report advising the court of the FCC's order, and attaching a copy of the order as an exhibit. If the FCC does not issue a ruling on theses matters by November 21, 2014, defendant shall file a status report by that date advising the court as to the FCC's progress on resolving the petition. Upon receipt and review of these filings, the court will set an appropriate schedule for further proceedings.

So ordered.

/s/ John T. Curtin

JOHN T. CURTIN

United States District Judge

Dated: May 28, 2014