UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-61747-MGC/TORRES

| | |
|---|---|
| KURT S. SOTO, an individual, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br> vs.<br><br>THE GALLUP ORGANIZATION, INC., a Delaware corporation,<br><br>    Defendant.<br>_____ | **CLASS ACTION**<br><br>**DEFENDANT GALLUP, INC.'S RESPONSE TO PLAINTIFF'S THIRD AND FOURTH NOTICES OF SUPPLEMENTAL AUTHORITY**<br><br>Honorable Marcia G. Cooke |

LAURIE C. MARR, on behalf of herself and all others similarly situated,

    Plaintiff,

 vs.

GALLUP, INC., a Delaware corporation,

    Defendant.
_____/

ANN FOX, individually and on behalf of all others similarly situated,

    Plaintiff,

 vs.

GALLUP, INC., a Delaware corporation,

    Defendant.
_____/

**DEFENDANT GALLUP, INC.'S RESPONSE TO
PLAINTIFF'S THIRD AND FOURTH NOTICES OF SUPPLEMENTAL AUTHORITY**

Defendant Gallup, Inc. hereby responds to Plaintiff's Third and Fourth Notices of Filing Supplemental Authority In Support of Plaintiff's Request To Deny Defendant's Motion For Stay Pursuant To The Primary Jurisdiction Doctrine (Documents #55 and #57) (hereinafter the

"Supplemental Authority.") As set forth below, the Supplemental Authority is procedurally improper and substantively irrelevant to Gallup's Motion to Stay.

1. **Plaintiff's Supplemental Authority Should Be Stricken Because It Raises Issues Not Presented in Plaintiff's Opposition to the Motion to Stay**

Gallup filed its Motion to Stay on April 3, 2014 (Document #40) and Plaintiff filed his response to the Motion to Stay on April 29, 2014 (the "Response") (Document #43). In his Response, Plaintiff focused solely on whether additional discovery was needed regarding the current capacity of Gallup's dialing equipment for random or sequential number generation. In fact, Plaintiff conceded that a stay may be warranted in this case, but that Plaintiff should be entitled to additional discovery to determine the current capacity of Gallup's dialing equipment. *See* Document # 43 at p. 9. Plaintiff requested that for this reason, a decision on the Motion to Stay should be deferred or the Motion to Stay should be denied without prejudice until Plaintiff could conduct such discovery. *Id.* Nowhere in Plaintiff's Response did Plaintiff raise the arguments that he appears to assert by filing his Supplemental Authority—namely, that the Motion to Stay should be denied because the FCC has already adjudicated the relevant issues, and that the Motion to Stay should be denied because Gallup uses a predictive dialer or uses an artificial or prerecorded voice. Thus, Plaintiff's Supplemental Authority is an improper attempt to make completely new arguments that were never raised in his Response after the time to file an opposition to the Motion to Stay has expired. *See* Local Rule 7.1(c) (requiring opposing memoranda to be served no later than 14 days after service of the motion).

2. **Plaintiff's Supplemental Authority is Irrelevant to Gallup's Motion to Stay**

    (a) **The Reasons for Denying a Stay in the *Ayers, Fail*, *Murray*, and *Fenescey* Cases Are Not Applicable to the Present Case**

In addition to being procedurally improper, the Supplemental Authority is substantively irrelevant to the merits of Gallup's Motion to Stay. In his Third Notice of Filing Supplemental Authority (Document #55), Plaintiff directs the Court to the following four cases: *Ayers v.*

*Verizon Communications, Inc.*, 2014 WL 2574543 (M.D. Fla. June 9, 2014), *Fail v. Diversified Consultants, Inc.*, 2014 WL 2574532 (M.D. Fla. June 9, 2014), *Murray v. Diversified Consultants, Inc.*, 2014 WL 2574042 (M.D. Fla. June 9, 2014), and *Fenescey v. Diversified Consultants, Inc.*, 2014 WL 2526571 (M.D. Pa. June 4, 2014). In each of these cases the same defendant moved to stay TCPA proceedings pending the FCC's determination of two issues: (1) whether the TCPA applied to non-telemarketing activity such as debt collection, and (2) whether dialing equipment must have the current capacity to generate and dial random or sequential numbers in order to be considered an automated telephone dialing system ("ATDS") under the TCPA. The court denied a stay in each case. In doing so, each court held that the FCC and federal appeals courts have already decided that non-telemarketing activity such as debt collection falls within the purview of the TCPA, and thus a stay was not warranted on this basis. *Ayers*, 2014 WL 2574543, *1; *Fail* 2014 WL 2574532, *1, *Murray,* 2014 WL 2574042, *1; *Fenescey,* 2014 WL 2526571, *2.

   With respect to the defendant's second argument that a stay was warranted pending the FCC's determination regarding whether an ATDS must have the current capacity to generate and dial random or sequential numbers, the court in each case held that the FCC's guidance on the issue of capacity was unnecessary because the plaintiff in each of these cases had alternatively alleged that the defendant violated the TCPA through the use of **artificial or prerecorded voice messages**. *Ayers*, 2014 WL 2574543, *1 (stating, "regardless of any decision on the issue of what constitutes an ATDS, Plaintiff alleges, in the alternative, that [defendant] violated the TCPA through the use of artificial or prerecorded voice"); *Fail* 2014 WL 2574532, *1, *Murray,* 2014 WL 2574042, *1; *Fenescey,* 2014 WL 2526571, *3. In each case, the court held that because the plaintiff's claim regarding the use of artificial or prerecorded voice messages would appropriately be before the court regardless of the FCC's decision with respect to the definition of an ATDS, a stay pending the FCC's determination as to an ATDS' requisite capacity was

unwarranted.  *Ayers,* 2014 WL 2574543, *1*, Fail* 2014 WL 2574532, *1, *Murray,* 2014 WL 2574042, *1; *Fenescey*, 2014 WL 2526571, *3.

None of the grounds for denying a stay in the above four cases are present in this case. Unlike the defendant in the above cases, Gallup does not contend that the TCPA is inapplicable to non-telemarketing calls, nor does Gallup seek a stay on such basis.  As to the issue of artificial or prerecorded voice messages, Plaintiff does not even allege in his Complaint that Gallup uses artificial or prerecorded voice messages to place calls.  See First Amended Complaint (Docket # 4).  Because Plaintiff's TCPA claim is not predicated on the use of an artificial or prerecorded voice message, such a claim cannot form an independent basis to deny the Motion to Stay.  This conclusion is further supported by the fact that Gallup does not use artificial or prerecorded voice messages to place outgoing calls; instead, such calls are conducted by live associates.  The discovery responses attached to Plaintiff's Response confirm this fact.  *See* Plaintiff's Response (Document #43) at Exhibit C (Gallup's responses to Plaintiff's Interrogatory Numbers 7, 8, 16 [responding that the calls made to Plaintiff and all other calls made for polling purposes are conducted by a live associate and are not conducted using an artificial or prerecorded voice]); *see also* Plaintiff's Response (Document #43) at Exhibit B (Gallup's responses to Plaintiff's Request for Admissions Numbers 32, 33, 34, 35 [denying using an artificial or prerecorded voice to place outgoing calls]).  Thus, unlike in *Ayers, Fail*, *Murray*, and *Fenescey*, the issue of whether an ATDS requires the current capacity to generate and dial random or sequential numbers is directly relevant to the issue of whether Plaintiff can state a TCPA claim against Gallup, and the Court should stay this action pending a determination of this issue by the FCC.

(b)     **The Cases Cited by Plaintiff Governing Predictive Dialers are Inapplicable to the Motion to Stay**

The additional cases cited in Plaintiff's Third Notice of Supplemental Authority, *Sterk v. Path, Inc.*, 2014 WL 2443785 (N.D. Ill. May 30, 2014), and *Trainor v. Citibank*, *N.A.*, 2014 WL 2574527 (D. Minn. June 9, 2014) are also inapplicable to the present case.

Plaintiff contends that that the *Sterk* court granted summary judgment in favor of the plaintiff on his TCPA claim because the defendant's dialing equipment dialed from a list of stored telephone numbers.  *See* Document #55 at p. 1.  Plaintiff is mischaracterizing and over-simplifying the holding of *Sterk*.  In that case, the defendant denied using a device that violated the TCPA because its dialing equipment did not have the capacity to generate or call random or sequential numbers. *Sterk,* 2014 WL 2443785, *4.  The court disagreed, and held that a predictive dialer, in which the primary feature was the lack of human intervention to place calls, fell within the definition of an ATDS regardless of whether the predictive dialer had the current capacity to generate or call random numbers.  *Id.*  Because the defendant in *Sterk* used a predictive dialer that required no human intervention before a call could be placed to a cellular telephone, the court granted the plaintiff's motion for summary judgment.  *Id.* Thus, contrary to Plaintiff's assertion, *Sterk* did not stand for the proposition that ***any*** system that dials from a list constitutes an ATDS.

Similarly, in *Trainor*, the court denied the defendant's request for a stay pending the FCC's determination as to whether an ATDS must have the current capacity to generate and dial random or sequential numbers.  The court held that a stay was not warranted because defendant's dialing system was a predictive dialer, which the FCC had already ruled constituted an ATDS regardless of the dialer's capacity to generate and dial random numbers.  *Trainor*, 2014 WL 2574527, *2.  In so holding, the court cited an order by the FCC in 2003, which defined a predictive dialer as "having the capacity to dial numbers without human intervention" and equipment that "assists telemarketers in predicting when a sales agent will be available to take calls."  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* (2003) at ¶¶ 131, 132.

Both *Sterk* and *Trainor* are inapplicable to the present case because Gallup's equipment requires human intervention before a call can be placed to a cellular telephone.  *See* Declaration of Glen Kalhoff In Support of Motion to Stay, ¶ 6.  Accordingly, Gallup's dialing equipment

does not fall within the definition of a predictive dialer as defined by the courts in *Sterk* and *Trainor*. Because Gallup does not use a predictive dialer, the relevant inquiry in this case is whether Gallup uses equipment "that has the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers." 47 U.S.C. § 227(a)(1). As explained in Gallup's Motion to Stay, the question of whether this capacity must be "current" versus "theoretical," has not been decided by the FCC and is the subject of multiple petitions pending before the FCC. Because the adjudication of Plaintiff's claim turns on this question, a stay in this case is warranted.

  (c)  **The *Blair* Case Cited by Plaintiff Does Not Support Plaintiff's Position that a Stay is Unnecessary**

The final case cited by Plaintiff in his Fourth Notice of Supplemental Authority is the case of *Blair v. The CBE Group, Inc.*, 3:13-cv-00134, ECF No. 88 (S.D. Cal. June 9, 2014). The defendant in *Blair* sought a stay pending the FCC's determination of two issues: (1) whether the TCPA applied to non-telemarketing calls, and (2) whether dialing equipment must have the current capacity to generate and dial random or sequential numbers to be an ATDS. *Id.* at p. 2 As to the first issue, the court held that a stay was not warranted because, as explained in the cases discussed above, the FCC has already ruled that the TCPA applies to non-telemarketing calls such as debt collection. *Id.* at p. 3.

As to the second issue, the Southern District of California stated that a stay was not warranted because it was already clear that the TCPA mandated that "equipment must have the *capacity* to store or produce telephone numbers to be called using a random or sequential number generator." *Id.* at p. 4 (emphasis in original). In so holding, however, the *Blair* court did not state what type of "capacity" an ATDS must have—i.e., current capacity or possessing the mere theoretical capacity if modified by hardware or software. Gallup does not dispute that in order to constitute an ATDS under the TCPA, its dialing equipment must have the capacity for random or sequential number generation; however, Gallup's equipment does not ***currently*** have this

capacity, and the FCC's determination as to whether such equipment may still constitute an ATDS directly affects this case.

### 3. Conclusion

For the foregoing reasons, Gallup requests that Plaintiff's Supplemental Authority be stricken. In the event the Court declines to strike the Supplemental Authority, Gallup separately contends that Plaintiff's Supplemental Authority does not affect the merits of Gallup's Motion to Stay for the reasons set forth above. Gallup further requests that its Motion to Stay be granted and that Plaintiff's request that the Motion to Stay be denied without prejudice or stayed pending further discovery be denied for the reasons set forth in Gallup's Reply in Support of the Motion to Stay (Document #44).

Respectfully submitted,

/s/ Dora F. Kaufman
J. RANDOLPH LIEBLER
Florida Bar No. 507954
Email:  jrl@lgplaw.com
DORA F. KAUFMAN
Florida Bar No. 771244
E-mail: dfk@lgplaw.com
Attorneys for The Gallup Organization, Inc.
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Telephone:  (305) 379-0400
Facsimile:  (305) 379-9626

Felicia Yu, Esq.
fyu@reedsmith.com
Raagini Shah, Esq.
rshah@reedsmith.com
Reed Smith LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071
Tel.  213-457-8000
*(Admitted Pro Hac Vice)*

Case No. 13-61747-MGC/TORRES

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on <u>July 8, 2014</u> I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served on all counsel of record listed on the service list below via CM/ECF.

/s/ Dora F. Kaufman
DORA F. KAUFMAN

**SERVICE LIST**

Scott D. Owens, Esq.
Florida Bar No. 0597651
644 E. Hallandale Beach Blvd.
Hallandale, FL 33009
Telephone: 954-589-0588
Facsimile: 954-337-0666
Email:  scott@scottdowens.com

Steven R. Jaffe (Florida Bar No. 390770)
Email: steve@pathtojustice.com
Seth M. Lehrman (Florida Bar No. 132896)
Email: seth@pathtojustice.com
Mark S. Fistos (Florida Bar No. 909191)
Email: mark@pathtojustice.com
FARMER, JAFFE, WEISSING, EDWARDS FISTOS & LEHRMAN, P.L.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: (954) 524-2820
Facsimile: (954) 524-2822

Douglas J. Campion, Esq.
LAW OFFICES OF DOUGLAS J. CAMPION, APC
409 Camino Del Rio South, Suite 303
San Diego, CA 92018
Telephone:  (619) 299-2091
Facsimile:  (619) 858-0034
E-mail:  doug@djcampion.com

E. Elliott Adler, Esq.
ADLER LAW GROUP, APLC
402 W. Broadway, Suite 860
San Diego, CA 92101
Telephone: (619)531-8700
Facsimile:  (619)342-9600

Bret L. Lusskin, Esq.
Florida Bar No. 28069
1001 North Federal Highway, Suite 106
Hallandale Beach, FL 33009
Telephone:  954-454-5841
Facsimile: 954-454-5844
Email:  Blusskin@lusskinlaw.com

Todd M. Friedman, Esq.
Nicholas J. Bontrager, Esq.
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
369 S. Doheny Drive, #415
Beverly Hills, CA 90211
Telephone:  (877) 206-4741
Facsimile:   (866) 633-0228
Email   tfriedman@attorneysforconsumers.com
            nbontrager@attorneysforconsumers.com

Abbas Kazerounian, Esq.
KAZEROUNI LAW GROUP, APC
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone:  (800) 400-6808
Facsimile:   (800) 520-5523
Email: ak@kazlg.com

Joshua B. Swigart, Esq.
HYDE & SWIGART
411 Camino Del Rio South, Suite 301
San Diego, CA 92108
Telephone:  (619) 233-7770
Facsimile:   (619) 297-1022
Email: josh@westcoastlitigation.com